**CENTRAL TRUST CO v MOREHEAD et**

Ohio Common Pleas, Hamilton Co

Decided Aug 12, 1937

William J. Rielly, Cincinnati, for appellee. George S. Hawke, Cincinnati, and Chauncey D. Pichel, Cincinnati, for appellants.

## OPINION

By GORMAN, J.

This is an action to construe the will of Bingaman H. Morehead, who died in this county on December 29, 1929.

Item VII of his will reads as follows:

"ITEM VII. I give, devise and bequeath to The Central Trust Company, of Cincinnati, Ohio, my real estate located in Walnut Hills, and known as the St. Leger Apartments, in trust, however, for the following uses and purposes, to-wit: To hold, manage and control during the continuance of the trust, with power to lease the same from time to time for not exceeding three years at any one time, the net income therefrom to be paid to the beneficiaries hereinafter named monthly in the following proportions:

"To my said wife Florence Morehead, 24/40th thereof during her natural life.

"To my sister, Estelle Miller, 4/40ths thereof.

"To my sister Belle Hester, 4/40ths thereof.

"To my niece Mrs. Allen, 3/40ths.

"To my niece Mrs. Jones, 3/40ths.

"To my niece, Charlotte Morehead, 2/40ths.

"If the sale of the St. Leger Apartments be deemed advisable by my trustee and my wife, or in case of her death, my trustee and the majority in interest in said Apartment Building, then I hereby authorize and empower said trustee to sell and convey by proper instrument of conveyance said St. Leger Apartments, for said (such) price and on such terms and conditions as said trustee and my said wife, or said majority in interest in case of the death of my said wife, deems best. Upon the death of my said wife, I give, devise and bequeath said St. Leger Apartment Building, or the proceeds thereof if sold as above provided, in case of her death, as follows:

"To Mrs. Alice Fishback, an undivided 8/160ths interest.

"To Mrs. Mary Lou Keck, an undivided 8/160ths interest.

"To my sister Estelle Miller, an undivided 36/160ths interest.

"To my sister, Belle Hester, an undivided 36/160th interest.

"To my niece, Mrs. Allen, an undivided 27/160th interest.

"To my niece Mrs. Jones, an undivided 27/160th interest.

"To my niece, Charlotte Morehead, an undivided 18/160ths interest.

At the time of the death of Bingaman H. Morehead, he did not own the St. Leger Apartments in fee simple. He had a privilege of purchasing them at $100,000, and had paid $38,000 on the purchase price.

In order to complete the purchase, the trustee obtained permission from the Probate Court to borrow $55,000 from the New York Life Insurance Company and give its first mortgage on the premises. There is now due on that mortgage a balance of $42,625.

The St. Leger Apartments is rather old, and the operation of it has not been profitable. The Central Trust Company in order to make up losses has advanced for maintenance charges the sum of $38,667.

The trustee now has entered into a lease for three years and a contract for sale at the expiration of this time with the St. Leger Corporation. The terms of sale are that the St. Leger Corporation will pay $110,000 for the premises in varying amounts. This sum is to be paid by the St. Leger Corporation, assuming and agreeing to pay the balance due on the mortgage to New York Life Insurance Company of $42,625. It is to pay $40,000 in cash and issue two second mortgage notes amounting to $27,375 payable ten years after date.

The trustee claims it is in doubt as to the construction of the will and in its prayer asks to be advised by the court:

"(1) Whether or not plaintiff, as executor and trustee aforesaid, has the power to sell and convey said premises for a price and on the terms deemed by it, and by said Florence H. Morehead, widow of said Bingaman H. Morehead, to be advisable, without concurrence in their decision by the beneficiaries of said trust, including the remaindermen after the death of said Florence H. Morehead, or a majority in interest of said remaindermen.

"(2) Whether or not there is any obligation, either in law or under the provisions of the will of said Bingaman H. Morehead, upon a purchaser or other person dealing with it in connection with a sale of said premises, to see to the application of the purchase money, or other proceeds, to the purposes of said trust."

If the trustee had been the owner in fee simple when Bingaman H. Morehead died, this court would unhesitatingly rule the authority was lacking. Sales on credit in Ohio are to be very cautiously scrutinized, and are not favored under a strict construction. **Taylor & Morgan v Galloway, 1 Ohio 232; In Re Wiener, Gdn., 31 N.P. (N.S.) 448, 449-50.** True, a sale which carried with it in effect a substantial down payment, and a first mortgage for the balance, was held to be within the power of a trustee who had unfettered discretion. **Bernheim v Stark, Executor & Trustee, 9 Oh Ap 40.** The court knows of no sale on credit involving a second mortgage which has ever been authorized.

In this case, however, Bingaman H. Morehead did not own a fee simple title. The trustee in order to secure such a title had to mortgage the premises. Bingaman H. Morehead held a mere equity which could be lost if the trustee did not protect it.

A trustee always has authority to acquire the fee simple title. He further has the right, which was done here, to preserve and protect the trust property. In so doing, the trustee advanced $38,667.00 of its own funds. See 3 Pomeroy's Equity Jurisprudence, §1085; Turton v Grant, 86 N. J. Eq. 191.

The trustee is entitled to be reimbursed and if a sale was forced to pay the indebtedness on the premises, the beneficiaries would probably not receive anything. This, therefore, cannot be said to be a sale for the interest of the trustee, but is primarily for the best interests of the beneficiaries.

In place of a mere equity of $38,000 after an unprofitable operation, the beneficiaries will receive interest bearing notes of $27,375.00, which are secured by a mortgage. While there is a first mortgage of $42,625.00 on the premises, it must be remembered also that $40,000 is to be paid in cash, and that the purchase price is $110,000.

The testator evidently knew that it would be necessary to either purchase outstanding interests or to sell his own in the St. Leger Apartments, as he was not the owner of the fee simple title. He therefore stipulated that his widow, or after her death, a majority of the beneficiaries must consent to the sale. This was provided so that those primarily interested should have the right to reject or consent to the sale. The evidence shows that such a consent has been obtained from the widow.

Considering the possibility of further loss, the terms of the will, the mere equity held by the testator at his death, this court is of the opinion that not only did the trustee have authority to contract for the sale of the premises in question, but that the sale will be advantageous to the beneficiaries in interest. See **Willis, Administrator v Braucher, Gdn., 79 Oh St 299; 40 Ohio Jurisprudence, p. 419.**

Ohio is one of the few states that still clings to the doctrine that in certain cases the purchaser of property from a trustee must look to the application of the purchase money.

It has been said that the provisions of §10506-83, GC, which clearly abolishes this doctrine, is applicable only to trustees, for unknown or non-resident persons. See **40 Ohio Jurisprudence, pp. 545-6.**

If that be true, the rule set forth by Judge Ramsey in **Clyde v Simpson, 4 Oh St 446,** is still applicable in this state. At page 463 we find this test:

"Whenever the trust or charge is of a defined and limited nature, the purchaser must himself see that the purchase money is ap-

plied to the proper discharge of the trust; but wherever the trust is of a general and unlimited nature, he need not see to it."

See also **Theobald v Fugman, 64 Oh St 473.**

In the later case of **Stall v City of Cincinnati, 16 Oh St 170,** it was said that "when the trust is for the payment of debts, generally, with a special appropriation of an uncertain residue," the purchaser is not bound to see the proper application of the purchase money.

In this will it is evident that whatever sale of Bingaman H. Morehead's interest was made, obligations to complete the purchase would have to be made. That obligation, while not a debt, partakes of the attributes of a debt. Either the balance on the purchase price must be paid, or the equity of the testator would be lost. Clearly the trustee had a right to mortgage the premises to complete the purchase. Upon sale, since the trust was to continue, he had the right to invest any proceeds.

With such powers of discretion vesting in the trustee, this trust is not one of a limited and defined nature. In a situation such as this, where the trustee is entitled to a lien for advances made it would be impracticable for the purchaser to ascertain that applications were made in accordance with law. The will gave a widespread and unfettered discretion to the trustee in management of the premises; and the only condition of sale was that the widow or beneficiaries, if she were dead, consent to the sale.

Counsel for Margaret Groome Jones by answer attempts to raise the question whether the Probate Court had authority to permit the trustee to borrow money to acquire the fee simple title for the trust, and also states that the exceptions to the accounts of plaintiff as trustee were taken.

This is purely an attempt to collaterally attack a decree of June 1930. There are ample provisions for appeal from such orders, but they cannot be raised in this proceeding to construe the will. The record shows the loan was made, there is a lease with a contract of purchase executed, and an indebtedness owing for money advanced by the trustee.

In answer to the inquiry, the court holds that the trustee has authority to make the sale in question, and that the purchaser need not look to the application of the purchase money.